## EVIDENCE AS TO SCOPE OF EMPLOYMENT.

Circuit Court of Lucas County.

JOHN  C. CARLAND ET AL v. JOHN FELLER.

Decided, December 4, 1909.

*Negligence—Injury to an Employe from the Premature Discharge of a Blast—Scope of Employment—Failure of Evidence Showing Authority of Helper to Pull the Lever Which Fired the Explosive—Inconsistency between General Verdict and Answers to Interrogatorrogatories.*

1. In an action by an employe for injuries received in the course of his employment, it is error to admit testimony as to the incompetency of a fellow employe whose negligence caused the accident, or as to failure of the master to provide any rule for carrying on the dangerous work in which they were engaged, where there is no allegation in the petition to the effect that the plaintiff did not know the work was being carried on without any rule for its conduct, and did not know or have equal means with the master for knowing of the alleged incompetence.

2. A verdict for damages for injuries resulting from the premature firing of a blast is not supported by sufficient evidence, where there is an entire absence of any evidence that the man who pulled the lever which caused the discharge had ever been given any authority so to do, or that it was known on the work either by the master or fellow employes that he was in the habit of so doing.

KINKADE, J.; PARKER, J., and WILDMAN, J., concur.

This case is in this court for the third time. At the first trial of the case a verdict was directed for the defendant on the motion of the defendant, and error was prosecuted to that action of the court below, and that judgment of the court of common pleas was reversed for two reasons: first, for excluding evidence relative to whether the company had or had not a rule governing how the work should be done; and, second, for having directed the verdict. That went to the Supreme Court and was dismissed in the Supreme Court, as we understand, on the ground that the plaintiff in error did not file a supersedeas bond. The case was retried

in the common pleas court and a verdict of $5,000 recovered by the plaintiff. That case came to this court on error and was affirmed by a majority of the court; then proceeded to the Supreme Court, and was reversed and remanded. The case was again tried and the plaintiff recovered $10,000, and that is the case now here in which the plaintiff in error, Carland & Company, seeks to reverse the judgment of the court of common pleas.

The record is not long; presents less than 100 pages. It would not be accurate to say that the court had committed 100 pages, but it would be entirely accurate to say that all the members of this court are so familiar with every page of the 100 pages that we could stand any kind of an examination on this record. We have read the whole evidence and read it with care. The plaintiff in this case sought to recover principally upon two grounds: first, that the defendant had employed and kept in their employ a man by the name of Pete Eckebaum who was entirely incompetent to do that which he was employed to do; and second, that the company had no rule directing how this dangerous work of blasting should be done, and consequently that they were negligent in that regard. The petition and the supplement to the petition contained the allegations of course that no notice was given, when notice should have been given before the blast was fired and so forth, and sets up also the insufficiency of force that the defendant had employed, and other things, but the principal grounds relied upon for the recovery and submitted to the jury at the time of the trial in the court below were the known incompetency of the employe, Pete Eckebaum, and the failure to have any rule.

It will be observed upon reading this petition that neither the petition nor the supplement to the petition states that the plaintiff, John Feller, did not know of the incompetency of Eckebaum, nor does it state that he did not know that the company had no rule, nor does it state that he had not equal means of knowing with the employer. Our attention has not been called to this feature of the case by counsel, but in examining the pleadings we notice this to be true. We also notice in the

record that when evidence was offered to prove that the company had no rule, that it was objected to and was admitted over objection. The court is unanimously of the opinion that the evidence was not competent; there being no allegation in the petition or the supplement to the petition that the plaintiff did not know this fact, and the evidence being objected to when offered, the court is unanimously of the opinion that that evidence was not competent and should not have been admitted, and that no recovery should be based upon that feature of the case.

We then come to the question of the incompetency of the man Eckebaum. It must be conceded that there is some evidence in the case tending to show the incompetency of Eckebaum, to-wit, the statements of witnesses that he did not always at first understand what was said to him, and that at times they would have to tell him once or twice or more before he would distinctly understand what he was to do; and also the statement of Mr. Brenkamp that on the day of the accident he called to him as he was about to throw the lever, admonishing him not to throw it because it would result in injury to the men who were in the cut and were not prepared for the blast to be fired, which he did not hear, or if he did hear, apparently paid no heed to. Of course it is possible that it may have been said at such a time as that he could not heed it, that he had not time to comprehend it before he threw the lever; may have been said simultaneously with the throwing of the lever; but a fair construction of the evidence is that it was prior to that and no heed paid to it. So there was some evidence to submit to a jury on the question whether this man was incompetent to do that class of work.

The serious question in this case is whether this man was when doing that particular act inside or outside the scope of his employment. Counsel realize that, and the question has been presented to us with force, not only in argument but in the briefs, and as I have said, we have examined the record with great care in that regard. I am not going to take the time to go through the record in detail, but I will state our conclusion of what this record states unmistakably in some respects. In the first place, there is not a syllable of testimony in this record anywhere that anybody ever told Pete Eckebaum to pull a lever; not a syllable.

All there is on that subject in the record is practically to the contrary. When witnesses are asked whether any instruction was given to Eckebaum or to Flynn as to what Eckebaum should do, they say no instructions. It is conceded that Mr. Flynn was an entirely competent blaster; had worked for years, perhaps eight or ten years at the business, and was competent in every regard to do everything connected with the blasting. This man Pete was sent to him by the superior of Flynn as a helper, without any instructions as to what his duties should include. Mr. Flanagan says he gave Flynn no instructions, and he gave Pete no instructions as to what he should do. He sent him to Flynn because Flynn asked for him and he worked there some months, perhaps four months all told, with Mr. Flynn and the predecessors of Mr. Flynn in the blasting situation. As I have said, the record contains not a syllable from anybody that anyone ever heard Flynn or any other person tell Eckebaum to pull a lever. So that if Eckebaum was authorized to pull the lever at the time and pulled it, it must be determined from the course of conduct in which he was engaged. Of course it will not be contended that he might not have been authorized otherwise than by direct instructions to pull the lever, because if he was continually, or very frequently, pulling the lever, the jury might have a right to infer that somebody had instructed him, although no one could say in behalf of the plaintiff that anyone had so instructed him.

There being nothing in the record to the effect that anybody ever told Eckebaum to pull the lever, we are brought to the question whether his conduct indicates that he was in the habit of pulling the lever or firing the blast, and in this regard it is said in the brief of counsel for defendant in error that the record clearly shows that Pete Eckebaum was in the habit of pulling the lever and firing the blast. It may be said that no one can find a syllable in this record, other than the single statement on page 23, touching this subject. On that page of the record, this question is put to Mr. Brencamp, who was a driller and who was the man who said to Pete, "For God's sake, don't fire, you will kill somebody," or words to that effect. This question was put to Mr. Brencamp:

"Did you see this man Pete operate the lever to the battery prior to the day on which the blast was fired that injured Feller?   A.   Yes, sir."

That is the sum total of all there is in this record to show that Pete ever fired the blast prior to this time, and it will be observed that this question does not inquire of Brencamp whether he ever saw Pete pull the lever and fire the blast; it does not inquire when he saw him pull the lever, whether one, two or three months before; it does not inquire what happened when he pulled the lever; it does not inquire whether he was immediately censured; it does not show but what he may have been immediately censured or admonished never to do it again, and it does not show that this pulling of the lever fired the blast.   The language is limited, and exceedingly limited:

"Did you see this man Pete operate the lever to the battery prior to the day on which the blast was fired that injured Mr. Feller?   A.   No, sir."

We think that the evidence falls very far short of establishing the necessary fact that this man Eckebaum had been in the habit of firing the blast at that quarry such number of times as that his employer must take cognizance of the fact that he was acting outside of the scope of his employment.   It does not, we think, establish the fact that the scope of his employment included that duty.   The plaintiff for some reason saw fit to press this inquiry no further, to make it no more definuite, and the defendant left it as the plaintiff had left it; and that is the sum total in this whole record indicating that Pete ever fired the blast before, and it does not even state that he did ever fire the blast before.

Now when this case was submitted to the jury, the jury were handed by the court certain interrogatories, and the first interrogatory reads as follows:   "Was the stringing of the wires, attaching the same to the electric battery, operating the lever and firing the blast within the scope of Pete's employment; that is to say, such as he, Pete, might in the absence of any instructions reasonably be expected or permitted to do or perform in his services as a helper to Flynn?" and the jury answered "No";

and we think that the absence of any proof in the record other than this one indefinite statement, taken in connection with this special finding of the jury, that in the absence of express directions, it was not within the scope of his authority, clearly and definitely settles that this man Pete Eckebaum was acting at the time he pulled this lever entirely outside the scope of his authority. It seems to us that no other conclusion can be reached, and we feel that the subsequent finding of the jury in answer to interrogatories two and three, first in answer to two, that he was incompetent, and second, that it was known to Flanagan, are immaterial in the case.

I may say this in regard to certain other errors that have been alleged. The plaintiff in error here contends first that a verdict should have been directed at the close of the plaintiff's evidence, and not securing that, it should have been directed upon the motion that was made at the close of all the evidence, and that not having been done, a judgment should have been entered for the defendant notwithstanding the verdict on the coming in of this special finding, for the reason that the special finding is entirely inconsistent with the general verdict, can not be reconciled with it, and must be a controlling factor in this case, and that that motion should have been granted. We were also cited to certain requests which were refused, being 6, 8, 13, 28 and 29. We have considered the other items of error, but in view of the conclusion we have reached we have determined to express no opinion upon any error in this case except one. If the case should proceed to the Supreme Court and our conclusion should there be reversed, it might be back here for us to pass on the errors not passed on now.

I will say this generally that it is the unanimous opinion of the court that this verdict should be reversed as being against the weight of the evidence as shown by this record. That is the opinion of a majority, that the court below should have granted a motion for the judgment notwithstanding the verdict and entered a judgment in behalf of the defendant, and this being the conclusion that the court has arrived at, we think it is the duty of the court here to enter the judgment that the court

of common pleas should have entered, and that will be a judgment in behalf of the defendant.

PARKER, J.

As has been said by my associate in announcing the judgment of the majority of the court, we have agreed that the general verdict is against the weight of the evidence, but I am not in accord with my associates upon the proposition that a final judgment should be entered against the plaintiff below, the defendant in error. I believe that such a judgment should not be entered against the plaintiff, if it can be found by a search of the record that there is a scintilla of evidence tending to support the general verdict, and also where the record is such that the special findings of fact may stand. In my judgment the special findings of fact may stand in harmony with the general verdict here and still leave a scintilla of evidence in support of the general verdict upon the material issue that has been discussed by my associate as to the authority of Pete in the premises, or as to whether Pete was acting within the scope of his authority in firing the blast. We all agree, I believe, that this first interrogatory and the answer to it, do not, standing alone, require a judgment *non obstante veredicto;* that the question and answer are not sufficiently comprehensive to effect that purpose; but the question and answer may be construed as meaning simply that within the ordinary scope of his powers, such things as he might reasonably be expected to do as a helper, in the opinion of the jury, would not include this particular thing of firing the blast, still leaving open the question, which was a question upon the trial, a question which has been discussed before us, as to whether Pete might not still have been acting within the scope of his duty in obeying a direction from Flynn to fire the blast.

Now I believe with my associates that this record as it stands is against the weight of the evidence on that proposition. We think it is not fairly established by the whole evidence: first, that Pete was acting under some special direction from Flynn, and secondly, that Flynn was authorized to give that special direction, that it might be reasonably expected or anticipated by

the company that Flynn would direct Pete to do that class of work, or to do that particular thing. And yet in my judgment there are circumstances in the case indicating that Flynn had authorized the firing of blasts by Pete, and that Flynn was not being regarded by the company as violating his duties to the company in thus directing or permitting Pete to fire the blast; and believing that there is a scintilla at least of evidence upon that subject to support that contention, I can not concur in the judgment denying him a right to have his case retried in the common pleas court. In this respect the record is substantially as it was before, but because of the answer of the jury that it was not within the general scope of Pete's authority, merely as a helper, the record is considerably different than the record had under consideration when the case was last before us; it narrows the ground upon which there might be a recovery notwithstanding the special finding in answer to the interrogatory No. 1.

Now as to Pete's incompetency, the jury have answered that he was incompetent; but before I go to that I wish to remark this upon the subject of the helper. Pete was employed in and about this work to do various things that might be described as rough work. From time to time as the predecessor of Flynn called for an assistant about the shooting, Pete assisted him; from time to time after the operation of shooting devolved upon Flynn, and when Flynn desired a helper, Pete would leave his other work of ditching, carrying ties, or whatever he may have been doing in his work, and go to the assistance of Flynn. He had other duties to perform, and perhaps his other general duties outside of assisting Flynn required as much or more time of him than was devoted to his assisting Flynn.

It does not appear from this record that by the company or any one in authority the duties of the helper were defined; that the duties of the helper were in any way circumscribed, and I still hold to the opinion expressed on behalf of the majority of the court, and I believe expressed on behalf of the entire bench, when the case was here in the first instance, and which I then understood to be an expression of the opinion of the whole court in the one case and of the majority in the other, that being employed generally as a helper and assistant without his duties

being defined or in any way circumscribed, that it might reasonably be anticipated by the company that he would be directed by Flynn to do anything in and about the operation of loading and directing the blasts to be shot and firing them. But as a part of this the answer of the jury to Interrogatory 1 is opposed to the opinion expressed by the court and the views of the jury upon that question, of course as the case now stands before us, we are bound to obey. But as I say, it does not cover the whole question, it still leaves something. It still leaves something that was left if the jury had answered this same interrogatory by saying this, Yes, if directed so to do, which to my mind means substantially the same thing as the answer given. Pete no doubt was incompetent in a sense. The jury must have understood the respect in which he was regarded as incompetent. Why this particular duty of pulling the lever should be singled out as something that should not have been done by Pete is made manifest by the testimony as to the character of Pete's incompetency. Pete was physically competent to pull the lever. There is no doubt from this record but that Pete was competent to understand the object and effect of pulling the lever; there is no doubt but that Pete had sufficient intelligence and understanding that it would not do to pull the lever and fire the blast when men were near the blast. No doubt he had sufficient humanity to not purposely endanger the lives of his fellow workmen. But the trouble with him and the respect in which he appears to have been incompetent was that he was apt to misunderstand his orders because of his not being well acquainted with the language. And to my mind his situation there was very much like that of a deaf person put in the same position, or person almost deaf, to whom an order might be given that would be misunderstood, and therefore the danger of having a man of that character to fire the blast.

But perhaps we are not much at variance upon that question. The real vital question that is left unanswered by this special verdict, and upon which I think there is a scintilla of evidence, and upon which my asociates think there is not a scintilla of evidence, is as to whether Pete was doing that which he had been

directed by Flynn or the company to do, and if he did it under the direction of Flynn, whether Flynn had authority to direct him to do it.  I dissent only from the judgment.

KINKADE, J.

I want to add a word that I had intended to include in what I have said, but omitted through an oversight, and that is that although there were forty or fifty men employed, at least a very large number of men employed about this cut and the case has been tried three times, yet nobody is produced to say that he ever saw a blast fired when he saw Flynn where he would not be if somebody else other than Flynn (Pete?) had been firing the blast.  Men in the cut could not see who was firing the blast, but they had every opportunity to see whether Flynn was away from where he would be were he firing the blast, and on the three trials, and with the large number of men employed in the cut, as I have said, nobody says that Flynn was ever in the cut and away from the battery at the time the blast was fired.

One further thought, and that is this:  That there is not a scintilla of evidence in the record that this man Pete ever misunderstood an order before while he was upon this work; and he was under the direction of a man of high experience and judgment in connection with the blasting, and was sufficient in his intelligence as helper.